## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

FRANK HARDZOG, )
)
    Plaintiff, )
)
v. ) Case No. CIV-16-597-STE
)
NANCY A. BERRYHILL,[1] )
Acting Commissioner of Social Security, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative findings.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL BACKGROUND

Plaintiff's application for disability insurance benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 25-35). The Appeals Council denied Plaintiff's request for review. (TR. 1-4). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 7, 2012, the alleged disability onset date. (TR. 26). At step two, the ALJ determined Mr. Hardzog had the following severe impairments: mild diastolic dysfunction with ischemia, obesity, degenerative joint disease of the knees, major depressive disorder, posttraumatic stress disorder (PTSD), and anxiety disorder. (TR. 26). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 27).

At step four, the ALJ found that Plaintiff was not capable of performing his past relevant work. (TR. 33). The ALJ further concluded that Mr. Hardzog had the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 C.F.R. 404.1567(b) except he needs to occasionally sit/stand at the workstation without a loss of productivity; he can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; he should never climb ropes, ladders, or scaffolding; he can frequently

> balance; he has no manipulative, visual, or communicative limitations; and he must not work at unprotected heights or around dangerous moving machinery or equipment. In addition, the claimant can understand, remember, comprehend, and carry out simple work related instructions and tasks; can work with supervisors and co-workers on a superficial work basis; can adapt to routine changes in the work environment; but cannot work with the general public.

(TR. 29).

Based on the finding that Mr. Hardzog could not perform his past relevant work, the ALJ proceeded to step five. There, he presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 59). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 59-60). The ALJ adopted the testimony of the VE and concluded that Mr. Hardzog was not disabled based on his ability to perform the identified jobs. (TR. 35).

### III. ISSUE PRESENTED

On appeal, Plaintiff alleges that the ALJ erred in not being more specific about the frequency or amount of time spent in each position for the RFC's "sit-stand" option.

### IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

3

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ERROR IN THE RFC

At the hearing, Mr. Hardzog testified that due to back pain, he could only sit for approximately 20-30 minutes at one time and due to knee pain, he could only stand for approximately 30-40 minutes at one time. (TR. 47-49). In the RFC, the ALJ stated that Mr. Hardzog was limited to performing light work with an added restriction of needing to "occasionally sit/stand at the workstation" "without a loss of productivity." (TR. 29). With the sit-stand limitation, the VE identified three jobs that Plaintiff could perform, and the ALJ relied on the jobs at step five. (TR. 35, 59-60). Although the RFC allowed for a sit-stand option, Plaintiff argues that the ALJ failed to identify, with specificity, the frequency with which Plaintiff would need to change positions from sitting to standing in order to not lose productivity on the job. As a result, Mr. Hardzog contends that the hypothetical was defective and could not provide a basis for the step five findings. Mr. Hardzog is correct.

In asserting this position, Plaintiff relies on SSR 96-9p, which provides:

An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and

4

> standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

SSR 96-9p, 1996 WL 374185, at *7 (emphasis provided). As an initial matter, the Court notes that SSR 96-9p, as written, is specifically applicable to *sedentary* work and the RFC in the present case limited Plaintiff to less than a full range of *light* work. However, the statutory definition of light work requires "a good deal of walking or standing, or … sitting most of the time." 20 C.F.R. § 404.1567(b). As a result, an individual's ability to sit and stand is also relevant to "light" work. *See Wahpekeche v. Colvin*, 640 F. App'x 781, 784-85 (10th Cir. 2016) (applying SSR 96-9p in the context of "light" work); *Vail v. Barnhart*, 84 F. App'x 1, 5 (10th Cir. 2003) ("Precisely how long a claimant can sit without a change in position is also relevant to assumptions whether he can perform light work.") (citing 20 C.F.R. § 404.1567(b)). In fact, the SSA has defined an individual's need to alternate sitting and standing as a "Special Situation" and devoted an entire section to the issue in an SSR evaluating exertional limitations within a range of work. *See* SSR 83-12, 1983 WL 31253 (Jan. 1, 1983). There, the SSA stated:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work.
>
> …
>
> Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit

> or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12, 1983 WL 31253, at *4.

Here, the ALJ recognized Mr. Hardzog's need to alternate sitting and standing, as evidenced by the RFC which stated that Plaintiff "needs to occasionally sit/stand at the workstation[.]" (TR. 29). But as noted by Mr. Hardzog, the RFC is silent regarding the frequency with which he would need to alternate positions. The omission is critical because with the restriction, the VE stated that Plaintiff could perform only *unskilled* work, which the SSA has specifically stated is "particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4.

The Commissioner attempts to salvage the RFC by pointing to the ALJ's use of the term "occasionally" which the SSA has defined as "up to one third of the day." (ECF No. 13:13). But the use of the word "occasionally" in the context of the RFC would still only translate to a finding that Plaintiff needed to alternate positions for up to one-third of the workday. What is still unknown, however, is *how often* Mr. Hardzog would need to alternate positions within the "one third of the workday" period.

The Commissioner's reliance on *Wahpekeche v. Colvin*, 640 F. App'x 781 (10th Cir. 2016) fares no better. There, the plaintiff argued that the ALJ's RFC assessment was flawed because it failed to specify the frequency of her need to alternate sitting and standing. *Wahpekeche*, 640 F. App'x at 784. The Court disagreed, however, noting that the ALJ had adequately specified the frequency of the plaintiff's need to change positions by stating that she could stand a maximum of 1 hour at a time and sit a maximum of 1

hour at a time and stand/walk 2 hours out of an 8–hour workday, and sit 6 hours out of an 8–hour workday. *Id.* at 782, 784-785. Ultimately, the Court stated:

> the ALJ's specification of maximum sitting, standing, and walking times, *together with her adoption of brief hourly breaks*, provided sufficient information to support the RFC assessment concerning Ms. Wahpekeche's need to alternate sitting and standing.

*Id.* at 785. (emphasis added). According to the Commissioner:

> the claimant's total two-hour standing/walking ability with a six-hour sitting ability in *Wahkapeche* constitutes a far lower exertional RFC than Plaintiff's higher total six-hour standing/walking ability with the same six-hour sitting ability in this case[.]

(ECF No. 13:14). Apparently, the Commissioner believes that because Mr. Hardzog is less restricted than the plaintiff in *Wahkapeche*, the Court should conclude that the RFC here is sufficient. But that reasoning focuses only on the maximum amount of time that either plaintiff could sit and/or stand, not the frequency with which each individual would need to alternate positions. In *Wahkapeche*, the ALJ specifically stated that the plaintiff would need to change positions every hour. *Wahkapeche*, 640 F. App'x at 782. Here, the ALJ stated only that Mr. Hardzog would need to occasionally alternate positions. (TR. 29). But as stated, this restriction does not indicate how often Plaintiff would need to change positions, which is particularly crucial in unskilled work.

Under such circumstances, both the decision and hypothetical question lack key facts and the VE's testimony cannot provide substantial evidence to support the ALJ's decision. *Vail,* 84 F. App'x at 5 (reversing the ALJ's decision that the claimant could perform less than the full range of light work "with brief changes of position" because the opinion "did not properly define how often [the claimant] would need to change positions"

7

and the hypothetical question lacked the same detail); *see also Maynard v. Astrue,* 276 F. App'x 726, 731 (10th Cir. 2007) (reversing because the ALJ's hypothetical question "provided no specifics to the VE concerning the frequency of any need [the claimant] may have to alternate sitting and standing" and was "therefore flawed as it pertains to a sit-stand option" and holding that in such circumstances, the VE's testimony "is not ... reliable").

Moreover, the Court finds that the ALJ's error is not harmless. For example, Plaintiff testified that he can generally sit for only 20-30 minutes at one time and that he can stand for only 30-40 minutes at one time. (TR. 47-49). The ALJ noted Mr. Hardzog's testimony regarding his limited ability to stand, and discounted Plaintiff's overall credibility, but he did so without stating whether he believed Mr. Hardzog's particular testimony regarding sitting and standing limitations. *See* TR. 29-30. Accordingly, the Court can only speculate as to whether the ALJ adopted or rejected this particular testimony. And even if the Court assumed the truth of Plaintiff's testimony, the VE was not asked to consider that evidence, rendering the step five findings deficient.

Plaintiff also argues that the RFC restriction which stated that he would need to alternate positions "without a loss of productivity" impermissibly presumes the amount of productivity an individual with the sit-stand option would have and "usurps the role of the VE in determining whether jobs exist for the worker." (ECF No. 12:6). According to Mr. Hardzog, the ALJ "assumed the fact [of no loss of productivity] with the sit-stand limitation and that was error." (ECF No. 12:7). The Court disagrees. The additional limitation of performing work "without the loss of productivity" was independent from the

"sit-stand limitation" and served as an *additional* restriction in the hypothetical. Ultimately, it was up to the VE to define jobs that would allow for a sit-stand option with no loss of productivity, but the latter restriction was not dependent on the former.

**VI.     SUMMARY**

In sum, the Court concludes that the sit-stand limitation in the RFC was not sufficiently specific as to frequency, which directly impacted Plaintiff's ability to perform light, unskilled work. Because the RFC was faulty, the resulting hypothetical to the VE was also deficient and the findings at step five lack substantial evidence. Thus, reversal and remand is warranted. On remand, the ALJ shall make specific findings regarding the frequency with which Mr. Hardzog needs to alternate positions.

**VII.    ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative findings.

ENTERED on January 31, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE